## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHERYL EBERG,
      Plaintiff,

      v.                                                            No. 14-cv-01696 (VAB)

U.S. DEPARTMENT OF DEFENSE,
      Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, Cheryl Eberg, brings this action against Defendant, the United States Department of Defense.  Plaintiff's Complaint [Doc. No. 1] states two claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*: (1) that Defendant failed to release responsive, non-exempt records in violation of FOIA, 5 U.S.C. § 552(a)(3)(A); and (2) that Defendant failed to make a reasonable effort to search for responsive records in violation of FOIA, 5 U.S.C. § 552(a)(3)(C).

Defendant has moved for summary judgment.  For the reasons set forth below, Defendant's Motion for Summary Judgment [Doc. No. 28] is GRANTED in part and DENIED in part.

## I.  FACTUAL BACKGROUND

All of the facts recited below, derived from the Complaint [Doc. No. 1] and parties' Local Rule 56(a) Statements [Doc. Nos. 28-2, 31-1], exhibits, affidavits, and supplemental filings, are undisputed unless otherwise noted, and the Court presents all facts "in the light most favorable to the nonmoving party"—here, Plaintiff—after drawing "all reasonable inferences in

[her] favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000) (quotation marks omitted).  Additional facts are discussed in the analysis where relevant.

Cheryl Eberg, a female veteran, served in the United States Army and the Connecticut Army National Guard from 1983 through 2011.  In 2006, while serving in the Connecticut Army National Guard, Ms. Eberg's unit was activated and transferred to Fort Dix, New Jersey to prepare for deployment to Iraq as part of Operation Iraqi Freedom.  At the time, her surname was Gilbert, and her rank was Master Sergeant.

During her time at Fort Dix and in Iraq, Master Sergeant Gilbert and other female soldiers allegedly were subjected to sex discrimination, including sexual harassment, particularly from Lieutenant Colonel William H. Adams, the Battalion Commander.  Eventually, Master Sergeant Gilbert filed an Equal Opportunity ("EO") complaint against Lieutenant Colonel Adams.  Following her complaint, Lieutenant Colonel Adams allegedly engaged in numerous incidents of retaliatory conduct against her, including increasingly explicit sexual advances. After returning to the United States from Iraq in September 2007, Master Sergeant Gilbert had to continue interacting with Lieutenant Colonel Adams, until her honorable discharge in August 2011.  Lieutenant Colonel Adams allegedly continued to harass her during this period.

In 2014, Ms. Eberg began receiving disability compensation benefits for post-traumatic stress disorder ("PTSD") induced by her experience of military sexual trauma ("MST").  Since retiring from the military, Ms. Eberg obtained employment with the Connecticut Department of Veterans Affairs, and also has become an advocate against sex discrimination in the military.

In largely identical letters dated between April 17 and August 1, 2014, Ms. Eberg submitted FOIA requests to numerous different offices within the Department of Defense

("DoD").  As much of this dispute turns on the nature of these requests, the Court includes them

here in their entirety:

> Requester seeks the release of <u>all and every underlying record</u> containing the
> following:

> (1) All complaints and records of an instance of alleged sexual assault ('SA'),
> equal employment opportunity ('EEO'), and sexual harassment ('SH') made
> by Requester at any time from her entry into service on or about August 5,
> 1983 up to her discharge on or about August 27, 2011, including but not
> limited to an EEO complaint she submitted while deployed in Iraq with the
> 143rd Combat Sustainment Support Battalion in 2006 and an Inspector
> General harassment complaint she submitted while in Connecticut with the
> 143rd Combat Sustainment Support Battalion in 2007.  This Request seeks all
> records related to any EEO, SA, or SH complaint made by Requester,
> including but not limited to, the entire investigative or other file related to any
> such report or record, the underlying complaint, any records of investigation
> of such complaint, email and other communications about the complaint,
> witness statements, recommended disposition, adjudication, and/or appeal of
> such complaints.

> (2) All complaints and records made by third parties of an instance of SA, EEO,
> and SH perpetrated against the Plaintiff at any time from her entry into service
> on or about August 5, 1983 up to her discharge on or about August 27, 2011.
> This Request seeks all records related to any EEO, SA, or SH complaints
> made that concern Requester, including but not limited to the entire
> investigative or other file related to any such report or record, the underlying
> complaint, any records of investigation of such complaint, email and other
> communications about the complaint, witness statements, recommended
> disposition, adjudication, and/or appeal of such complaints.

> (3) All records of any general or special court-martial proceedings involving Col.
> William Adams, currently the Director of Logistics (GR) at the Army
> National Guard in Hartford, CT, at any time, including but not limited to
> charges sworn in all courts-martial, case files, judgments, sentences, and
> appeals.

> (4) All complaints and records of an instance of SA, EEO, and SH made against
> Col. William Adams at any time, including but not limited to a complaint
> submitted on or after January 1, 2005 by Chris Gutierrez.  This Request seeks
> all records related to any EEO, SA, or SH complaint made against Col.
> William Adams, including but not limited to the entire investigative or other
> file related to any such report or record, the underlying complaint, any records
> of investigation of such complaint, email and other communications about the

3

> complaint, witness statements, recommended disposition, adjudication, and/or appeal of such complaints.
>
> (5) All records regarding the award of a Combat Action Badge to Requester, including but not limited to any recommendation that she be awarded such badge between September 15, 2006 and August 4, 2007, records relating to that recommendation, and disposition of any such recommendation.
>
> (6) All records regarding the award of a Bronze Star Medal to Requester, including but not limited to any recommendation that she be awarded such badge between September 15, 2006 and August 4, 2007, records relating to that recommendation, and disposition of any such recommendation.

Compl. Ex. A [Doc. No. 14].

In April 2014, Ms. Eberg faxed her FOIA request to the Office of the Secretary of Defense and Joint Staffs FOIA Requester Service Center.  On April 25, 2014, the DoD Freedom of Information Division ("FOID") sent a "no records" response letter to Plaintiff, and suggested the names and addresses of other agenices that may have the records sought.  In April 2014, Ms. Eberg faxed her FOIA request to the DoD Office of Inspector General ("IG") FOIA Requester Service.  On August 22, 2014, the DoD IG FOIA Office informed Plaintiff it had conducted a search related to requests 1 and 2 and found no responsive records.

On April 22, 2014, Ms. Eberg mailed her FOIA request to the FOIA Office of Headquarters, Army Materiel Command ("AMC").  On May 7, 2014, the AMC FOIA Office requested from Ms. Eberg additional information that would identify which unit the 143rd Combat Support Sustainment Battalion was attached to during the deployment to Iraq.  On May 13, 2014, the AMC FOIA Office informed Ms. Eberg by e-mail that her FOIA request was referred to the Connecticut Army National Guard ("CTARNG").  On May 20, 2014, CTARNG notified Ms. Eberg that it had found a copy of her Army Commendation Medal and provided the document to her.  It also referred her to the DAIG for IG records and provided the address.  On

June 26, 2014, Ms. Eberg appealed CTARNG's response, and on July 7, 2014, CTARNG responded by reiterating that it did not possess responsive records.

On July 29, 2014, the AMC FOIA Office informed Ms. Eberg by e-mail to contact four organizations that may have the requested records: (1) the United States Army Office of the Inspector General; (2) the United States Army Office of the Judge Advocate General; (3) the United States Army Crime Records Center; and (4) the Connecticut Army National Guard.  Ms. Eberg was advised to contact these organizations directly.  On August 6, 2014, the AMC FOIA Office sent Ms. Eberg a letter outlining the actions taken to refer the FOIA request to other Army agencies.  On August 19, 2014, after receiving additional unit information from Ms. Eberg, the AMC FOIA Office e-mailed the Pacific Command ("PACOM") FOIA Office about the FOIA request.  On September 12, 2014, the AMC FOIA Office received a "No Records Found" certificate from the PACOM FOIA officer, which the AMC FOIA Office sent by e-mail to Ms. Eberg's attorney.  On August 4, 2014, the AMC FOIA Office received an appeal from Ms. Eberg, dated August 1, 2014.  It responded in a letter dated August 6, 2014, verifying the appeal and explaining the actions it had taken.

On August 21, 2014, the AMC FOIA Office referred the FOIA request to the Office of the Department of the Army Inspector General ("DAIG").  On or about August 29, 2014, the DAIG received Ms. Eberg's FOIA request.  On September 3, 2014, the DAIG conducted a search of the electronic Inspector General Action Request System database ("IGARS") and found no responsive records.  On September 9, 2014, another search of IGARS was done using the alternative surnames "Gilbert" and "Pilgrim," and again no responsive records were found.  On September 10, 2014, the DAIG contacted the 25th Infantry Division, the 8th Theater Support Command, and the Hawaii National Guard IG offices asking for records pertaining to any IG

complaint filed by Ms. Eberg.  All three offices responded that they had no records of IG complaints from Ms. Eberg.  On September 15, 2014, the DAIG informed Ms. Eberg that no IG records responsive to her FOIA request existed and that the IGARS records only had a three-year retention period.  On September 23, 2014, Ms. Eberg appealed the "no records response," and in response, the DAIG conducted another search of IGARS for IG subject containing "Adams" and complainants containing "Gutierrez" in the last name.  The search revealed no responsive records.  On October 14, 2014, the DAIG also asked the DAIG Non-Senior Officials and Senior Officials Investigative Divisions and the National Guard Bureau ("NGB") IG Office for responsive records, but all three responded that they did not have any.  The DAIG searched another database called FOIAXpress on December 29, 2014, and found a five-page responsive document.  On January 9, 2015, the DAIG responded to Ms. Eberg's appeal and released a redacted copy of the found document to her.  On January 30, 2015, the Army OGC denied Ms. Eberg's appeal, finding that DAIG and the other six IG offices had made a thorough search.  On March 16, 2015, the Information Resource Management Division of the DAIG found two more responsive records, which were released to Ms. Eberg in redacted form on March 19, 2015.

On April 22, 2014, Ms. Eberg mailed her FOIA request to the United States Army Crime Records Center of the United States Army Criminal Investigation Command ("USACIDC").  In a letter dated May 8, 2014 to Ms. Eberg, USACIDC neither confirmed nor denied the existence of responsive records, which is known as a *Glomar* response.  Ms. Eberg submitted an appeal in a letter dated June 26, 2014.  On January 21, 2015, the Department of the Army Office of the General Counsel ("OGC") denied this appeal, finding that USACIDC had made a thorough search and that there were no responsive records.

On August 1, 2014, Ms. Eberg mailed her FOIA request to the NGB FOIA Requestor Service Center.  The NGB referred part of the request to the United States Army Central Command ("USARCENT") on August 11, 2014.  USARCENT tasked three components with searching for responsive documents.  No response was sent to Ms. Eberg regarding the results of these searches.  On September 28, 2014, Ms. Eberg made a subsequent FOIA request restating the items requested in her first request.  On October 24, 2014, the NGB responded by referring to the August 11, 2014 referral letter.

In August 2014, Ms. Eberg mailed her FOIA request to the United States Army Office of the Judge Advocate General ("OTJAG").  OTJAG referred the request to the United States Army Human Resources Command ("AHRC"), the Clerk of the Court for the Army Court of Criminal Appeals ("ACCA"), and the Department of the Army Office of the Deputy Chief of Staff G-1 ("G-1"), which is the organization that handles EO matters.  The United States claims it also referred to request to the Office of the Administrative Assistant for the Army ("OAA").  On September 30, 2014, OTJAG received a FOIA appeal from Ms. Eberg, which OTJAG informed her it was not forwarding to the Army OGC because its earlier notice to her was not a denial.

On August 13, 2014, the Office of the Clerk of the Court in the ACCA received the FOIA request referral.  On February 25, 2015, the Clerk of the Court notified Ms. Eberg of a "no records" result.  On August 14, 2014, the G-1 received the FOIA request referral and forwarded the request to its EO Policy Branch to conduct a search.  The EO Policy Branch provided a "No Record" response letter to Ms. Eberg on September 12, 2014.  On August 18, 2014, the AHRC received the FOIA request referral with respect to request items 5 and 6.  The Awards and Decorations Branch of AHRC searched three databases and found no responsive records.  On September 16, 2014, the AHRC notified Ms. Eberg of the "no records" result.

On November 19, 2014, Ms. Eberg sent a FOIA request to the Connecticut Army National Guard pursuant to the Connecticut state FOIA statute.  On November 25, 2014, the Connecticut Military Department ("CTMD") responded to the request acknowledging receipt, and on December 8, 2014, it notified Ms. Eberg that it did not have any responsive records.  On November 18, 2015, the Connecticut Freedom of Information Commission dismissed Ms. Eberg's Connecticut FOIA request, holding that all the records sought are maintained exclusively as federal records outside the jurisdiction of the Connecticut FOIA.

On January 5, 2015, the Assistant Secretary of the Army, Manpower and Reserve Affairs, Army Equal Opportunity Policy Branch ("AEOPB") received the FOIA request as a referral from the Army Litigation Division.  The AEOPB searched the Equal Opportunity Reporting System database ("EORS") and electronic mail files, but found no responsive records after using the search terms, "Cheryl Eberg, Cheryl Gilbert, and Cheryl Pilgrim."  On March 11, 2015, the EO Advisor, Headquarters, 45th Sustainment Brigade ("45th SB") received the FOIA request as a referral from the Army Legal Services Agency.  The EO Advisor's search, which used the possible names, "Cheryl Eberg," "Gilbert," and "Pilgrim," revealed no responsive records.

## II.    STANDARD OF REVIEW

"FOIA was enacted to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed."  *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quotation marks omitted).  FOIA reflects "a general philosophy of full agency disclosure," *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976) (quotation marks omitted), and "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies," *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir.1999).

"There are, however, limits to FOIA's reach.  Specifically, in recognition of those interests that may at times conflict with the policy of full disclosure, FOIA also provides nine exemptions from its disclosure requirement."  *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 292 (D. Conn. 2008) (quotation marks and citations omitted).  Yet, "[i]n keeping with the policy of full disclosure, the exemptions are narrowly construed with doubts resolved in favor of disclosure."  *Halpern*, 181 F.3d at 287 (quotation marks omitted).

"As with all motions for summary judgment, summary judgment in a FOIA case is appropriate only when the . . . materials submitted to the Court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 240 (D. Conn. 2012) (quotation marks omitted) (hereinafter "*SWAN I*").  "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA."  *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994).

To sustain that burden, the agency may rely on "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption."  *Id*.

> Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face.  When this is the case, the district court may forgo discovery and award summary judgment on the basis of affidavits.

*Id.* (quotation marks and citations omitted).  However, this good faith presumption only applies to agency affidavits or declarations that are "reasonably detailed."  *Halpern*, 181 F.3d at 295. Affidavits "must be relatively detailed and non-conclusory," which "means, for instance, that

[they] must describe in reasonable detail the scope of the search and the search terms or methods employed." *SWAN I*, 888 F. Supp. 2d at 241 (quotation marks omitted).

"Finally, FOIA instructs district courts to review *de novo* agency decisions to withhold records.  The *de novo* standard of review for FOIA cases is well established in this circuit." *El Badrawi*, 583 F. Supp. 2d at 292 (citations omitted).

## III.   DISCUSSION

Defendant argues that, as a matter of law, it conducted a reasonable search for responsive records and established that any withheld documents were properly withheld or redacted.  Plaintiff argues that Defendant has not met its burden and that summary judgment is not appropriate.

### A.   Adequacy of Searches

"To prevail on summary judgment when the adequacy of an agency's search is at issue, the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 205 (D. Conn. 2014) (quotation marks omitted).  In order to meet this burden, agency affidavits and declarations

> should provide reasonably detailed information about the scope of the search and the search terms or methods employed . . . [and] must also aver that all files likely to contain responsive materials (if such records exist) were searched.  To provide a complete description of the search, affidavits must detail files searched and the general scheme of the agency file system.  Without at least an elementary description of the general scheme of an agency's file system, a FOIA requester has no basis upon which to dispute an agency's assertion that any further search is unlikely to disclose additional relevant information....  [A]n adequate description need only provide reasonable detail about the parameters and execution of an agency's search and aver that all files likely to contain responsive material were searched.

*SWAN I*, 888 F. Supp. 2d at 244-45.  "In other words, a district court in a FOIA case may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *El Badrawi*, 583 F. Supp. 2d at 298 (quotation marks omitted).

"Finally, it bears noting that, even if an agency has met its burden by submitting, in good faith, relatively detailed and nonconclusory affidavits, the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order."  *Id.* at 299.

### 1.    Agencies with No Issue as to Adequacy of Searches

The adequacy of the searches conducted by the following governmental entities is not disputed: USACIDC Crime Record Center (*see* Decl. of Michelle Kardelis), OTJAG (*see* Decl. of Lisa Thomas), Clerk of the Court for the ACCA (*see* Decl. of Scott Bailey), Army OGC (*see* Decl. of Ronald Buchholz), USARCENT (*see* Decl. Lenore Jackson), AEOPB (*see* Decl. of Kay Emerson), PACOM (*see* Decls. of Donald Nordstrom), 45th SB (*see* Decls. of Dawn Ramos), and AHRC (*see* Decls. of Cynthia Blanch).  Indeed, these agencies submitted declarations that meet the standard of reasonable specificity as to the general scheme of the agencies' file systems, the files searched, and the parameters and execution of the searches, so as to support a likelihood that all files likely to contain responsive material were searched.

For example, in the declaration for the USACIDC Crime Record Center, Michelle Kardelis, the Chief of its FOIA and Privacy Act Division, provides: the specific names of the databases searched; specific descriptions of the types of files contained in those databases; the time period covered by those databases; the date on which the searches were conducted; the

search terms used for the searches; the procedure for creating an inventory log for records older than the retention period for the agency; and the results of the search of the inventory logs. *See* Kardelis Decl. ¶¶ 5-8.

Accordingly, summary judgment is granted as to the adequacy of the FOIA searches by these agencies.

### 2.  Department of the Army Inspector General

Defendant submitted two declarations from DAIG attorney-advisor Margaret Baines: the first filed with Defendant's Motion for Summary Judgment, *see* Baines Decl., Doc. No. 30-6, and the second filed with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Baines 2d Decl., Doc. No. 36-4, "[t]o address Plaintiff's issues with" the first declaration, Def. Reply Br. at 4.  Consistent with the applicable law, however, the Court cannot determine whether the searches conducted by the DAIG were reasonably calculated to return all responsive documents.

An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298.  Neither Baines declaration provides this level of detail about the DAIG's file systems.  Instead, she states that she searched the Inspector General Action Requests System database ("IGARS"), *see* Baines Decl. ¶¶ 6, 8, 11, and the FOIAXpress database, *see* Baines 2d Decl. ¶¶ 2-3.  The declarations do not contain a general description of how the agency's file systems are structured, or a sufficient explanation of the types of files contained in the particular databases that Ms. Baines specifies were searched.

The declarations also do not explain the agency's failure to search other databases.  She states only that "there are no other potentially useful databases at DAIG that could be searched

regarding Plaintiff's request."  Baines 2d Decl. ¶ 5.  The standard of reasonable specificity

requires more detail concerning "the structure of the agency's file system which renders any

further search unlikely to disclose additional relevant information."  *El Badrawi*, 583 F.Supp.2d

at 298.  As the *El Badrawi* court held, such a "failure to give detailed justifications for not

searching [other] databases . . . falls below the standard for 'relatively detailed and

nonconclusory' affidavits required to legitimate a summary judgment ruling."  583 F. Supp. 2d at

301.

Based on the foregoing, the Court denies summary judgment as the adequacy of the

FOIA searches conducted by the DAIG.

### 3.   Office of Inspector General Field Office

About one week after Plaintiff filed its opposition to this motion, the DAIG contacted the

Office of the Inspector General Field Office that "is missioned to address matters arising within

the Connecticut National Guard that are within the jurisdiction of the Inspector General."

Dettore Decl.,[1] Doc. No. 38-1 ¶¶ 1, 2.  The DAIG directed SFC Edward Dettore, the Assistant

Inspector General, to conduct a search for IG documents related to a former Connecticut Army

National Guard soldier with the surname Eberg or Gilbert or Pilgrim.  SFC Dettore's search

identified a 28-page record that he sent to the DAIG.  *See id.* ¶¶ 1-3.

An agency declaration, however, must "describe at least generally the structure of the

agency's file system which renders any further search unlikely to disclose additional relevant

information."  *El Badrawi*, 583 F.Supp.2d at 298.  Declarations that "do not state what database

was searched" and "do not describe what information the database contains" are "insufficiently

---

[1] While the declaration of SFC Edward Dettore is titled "Second Declaration of SFC Edward Dettore," this appears to be a typographical error, as there was no prior declaration from this individual filed with the Court.

detailed to show beyond material doubt that the search conducted . . . was adequate." *Vietnam Veterans*, 8 F. Supp. 3d at 212-13.

SFC Dettore's declaration only states that he "searched electronic databases with Share Drives on the Non-secure Internet Protocol Router Network (NIPRNET) allocated to the IG Office."  Dettore Decl. ¶ 4.  He does not explain how his office's files are organized into the NIPRNET, identify the names or number of databases he searched, or describe the types of files kept in or fields used by the databases he searched.

In addition, an agency declaration must provide a reasonable description as to why certain terms were selected or not selected for search.  *See SWAN I*, 888 F. Supp. 2d at 249-50. SFC Dettore's declaration states that he only used the search terms, "Eberg or Gilbert or Pilgrim."  Dettore Decl. ¶ 2.  The declaration does not explain why he narrowed his search terms to exclude keywords from Plaintiff's FOIA request, such as "Adams" and "Chris Gutierrez."

Accordingly, summary judgment must be denied as to the adequacy of the search conducted by the DAIG Field Office for the Connecticut Army National Guard.

### 4.    Connecticut Army National Guard

Defendant submitted two declarations from the Chief Legal Noncommissioned Officer of the CTARNG, SSG Christopher Clark: the first with Defendant's Motion for Summary Judgment, *see* Clark Decl., Doc. No. 30-8, and the second with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Clark 2d Decl., Doc. No. 36-6, "[t]o address Plaintiff's issues with [SSG Clark's] original declaration," Def. Reply Br. at 6.

An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information."  *El Badrawi*, 583 F.Supp.2d at 298.  A declaration also must "give detailed justifications for not

searching . . . any other databases it may own or have access to."  *Id.* at 301.  SSG Clark states

that searches were conducted of "CTARNG historical records (microfiche)", "the JAG Office

records storage area, on-line Personnel Electronic Records Management System (iPERMS)", and

"the Defense Sexual Assault Incident Database (DSAID)".  Clark Decl. ¶ 4.  However, his

declarations do not provide a description of the structure of the agency's file system or of these

particular databases, and do not explain why he searched these databases and not any others.

SSG Clark's supplemental declaration does include text from the online homepages of

the Defense Sexual Assault Incident Database ("DSAID") and the interactive Personnel

Electronic Records Management Systems ("iPERMS").  *See* Clark 2d Decl. ¶¶ 3, 5.  These pre-

existing descriptions provide a general description of the purpose of the databases and how they

are to be used, but do not explain how the file systems captured by these databases are structured

or how the files within them are organized.

In addition, SSG Clark's declarations do not "do not describe how [the agency's] other

electronic files are maintained" or "whether [the agency] "maintains any other filing systems,"

which is necessary for a court to discern whether any further search would be unlikely to disclose

additional relevant information.  *Vietnam Veterans*, 8 F. Supp. 3d at 212-13.  In fact, Plaintiff

discovered through independent research the existence of an additional database connected to

CTARNG that could potentially contain responsive records, *see* Pl. Sur-Reply Br. at 6, but SSG

Clark's declarations do not reference that database or explain the failure to search it.

CTARNG thus has failed to describe its file system adequately, and the Court therefore

cannot assess the adequacy of its search.[2]

---

[2] SSG Clark also stated that he contacted other offices to see if they had any files that could be searched.  *See* Clark 2d Decl. ¶¶ 7-8.  However, his declarations do not describe the filing systems and searches performed by these other offices, such as the Equal Opportunity Office (EOO), which he said "use[s] an electronic filing system to track cases."  Clark 2d Decl. ¶ 7.  In order to support summary judgment, his declaration would have had to describe the

A declaration must also explain why certain terms are selected for search and others are not.  *See SWAN I*, 888 F. Supp. 2d at 249-50.  SSG Clark's declarations do not explain why SSG Clark did not search, for example, for "Chris Gutierrez," as specified in Plaintiff's FOIA request.

In sum, SSG Clark's declarations do not provide reasonably specific explanations of the CTARNG's searches and therefore do not allow Plaintiff or the Court to evaluate the adequacy of those searches.  *See SWAN I*, 888 F. Supp. 2d at 245 ("The Court . . . looks only to the declarations to determine whether they provide enough . . . [so] that the Plaintiffs and Court may evaluate the searches' sufficiency.")

### 5.      National Guard Bureau

Defendant submitted two declarations from Jennifer Nikolaisen, Chief of the Office of Information and Privacy at the NGB and Chief FOIA and Privacy Officer for the National Guard: the first filed with Defendant's Motion for Summary Judgment, *see* Nikolaisen Decl., Doc. No. 30-7, and the second with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Nikolaisen 2d Decl., Doc. No. 36-5, "[t]o address Plaintiff's issues with [Ms.] Nikolaisen's original declaration," Def. Reply Br. at 7.

Ms. Nikolaisen's two declarations do not warrant a grant of summary judgment.  An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information."  *El Badrawi*, 583 F.Supp.2d at 298.  Ms. Nikolaisen's declarations only state certain types of records that her office "does not hold."  Nikolaisen 2d Decl. ¶ 3; *see also id.* ¶ 4.  The declarations do not explain what types of files the NGB does maintain or describe the structure of its filing system.

---

structure of the EOO's electronic files and databases, the search methods employed, and whether all methods likely to find responsive files were used.  *See Vietnam Veterans*, 8 F. Supp. 3d at 206.  Additionally, SSG Clark stated that several other offices "did not maintain any records relative to the request."  Clark 2d Decl. ¶ 8.  This conclusory statement does not explain the structure of those offices' file systems or whether the offices have other databases that could have produced responsive records.

As in *Vietnam Veterans*, Ms. "Nikolaisen's declaration is insufficient to satisfy the National Guard Bureau's burden because it is not reasonably detailed and does not show that the National Guard Bureau conducted a search that was reasonably calculated to uncover all relevant documents." *Vietnam Veterans*, 8 F. Supp. 3d at 222; *see also id.* at 209 (finding agency declaration "stating that they would not have responsive documents," without describing "what those offices do contain and why they would not have any responsive documents," insufficient to show search was reasonable).

Furthermore, as in that case, Ms. Nikolaisen's descriptions of the processing of Plaintiff's FOIA request are incomplete.  She avers that the FOIA requests "should have been referred" to other agencies.  Nikolaisen 2d Decl. ¶¶ 6-7.  Yet, she never states whether those referrals were made, nor, if they were made, any details that would show the adequacy of those agencies' searches, essential information.  *See Vietnam Veterans*, 8 F. Supp. 3d at 222.

For all the foregoing reasons, as in that case, this Court too must deny summary judgment as to the adequacy of the searches conducted by the NGB.

### 6.    Army Pacific

The FOIA officer for PACOM referred Plaintiff's FOIA request to U.S. Army Pacific ("USARPAC") on August 19, 2014.  *See* Lasell Decl. ¶ 2; Nordstrom Decl., Doc. No. 30-17 ¶ 3. Defendant submitted two declarations concerning the searches by this agency: the first declaration, from Sadie Lasell, a FOIA and Privacy Act officer for USARPAC, filed with Defendant's Motion for Summary Judgment, *see* Lasell Decl., Doc. No. 30-14, and the second declaration, from George Sandlin, another FOIA officer for the USARPAC, filed with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Sandlin

Decl., Doc. No. 36-10, "[t]o address Plaintiff's issues with Sadie Lasell's original declaration," Def. Reply Br. at 9.

An agency declaration "must describe in reasonable detail the scope of the search and the search terms or methods employed." *SWAN I*, 888 F. Supp. 2d at 241 (quotation marks omitted). Ms. Lasell's declaration does not describe the use of any search terms or the search methods, other than identifying the personnel involved.

An agency declaration must also "describe at least generally the structure of the agency's file system." *El Badrawi*, 583 F.Supp.2d at 298. Her declaration states that "a good faith search effort" was made "throughout Subordinate Command of the 8th Theater Sustainment Command (TSC)" and "[a]n extensive search was also conducted in the Army Records Information Management System (ARIMS)." Lasell Decl. ¶ 2. The declaration does not explain why they conducted a search at the Subordinate Command, what the Subordinate Command is, or what kinds of records or files may be found there. The declaration also fails to detail the nature of ARIMS database or the files stored therein, and gives no justification for its use.

The burden is on a defendant to put forth evidence that demonstrates that its methods were adequate and reasonable. *See SWAN I*, 888 F. Supp. 2d at 245 ("Declarations are supposed to allow the Plaintiffs—and the Court—to evaluate the reasonableness of an agency's search.") Without an explanation about the types of files, systems, and even offices searched, Ms. Lasell's declaration cannot meet the standard of reasonable specificity.

In an attempt to cure these defects, Defendant submitted a supplemental declaration from George Sandlin, which provided more information. *See, e.g.*, Sandlin Decl. ¶ 4 (describing nature of G-1 office asked to conduct search, organization of its file system, structure of database it searched, and search terms it used). However, Mr. Sandlin's declaration, like Ms. Lasell's,

states that the 8th TSC conducted a search, *see* Sandlin Decl. ¶ 9, but does not explain the TSC's search methods, files, and file systems, whether any other potentially useful databases exist beyond its Electronic Military Personnel Office database ("eMILPO"), or what TSC even is.  His declaration also does not remedy the lack of detail on the nature of ARIMS or the files stored in it.  Mr. Sandlin does refer to "ARIMS."  *See* Sandlin Decl. ¶ 7.  But, this reference does not describe the structure of the database, the records kept in it, or whether ARIMS is the only potentially useful database, all of which are required by the reasonable specificity standard.  *See Vietnam Veterans*, 8 F. Supp. 3d at 206; *SWAN I*, 888 F. Supp. 2d at 245; *El Badrawi*, 583 F. Supp. 2d at 300.

Thus, the USARPAC declarations are insufficient to "show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Vietnam Veterans*, 8 F. Supp. 3d at 205.  Accordingly, the Court must deny summary judgment as to the adequacy of its searches.

### 7.  Headquarters, Army Materiel Command ("HQ AMC")

Defendant submitted two declarations from Gregory Turner, the Government Information Specialist for HQ AMC: the first filed with Defendant's Motion for Summary Judgment, *see* Turner Decl., Doc. No. 30-3, and the second filed with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Turner 2d Decl., Doc. No. 36-3, "[t]o address Plaintiff's issues with Gregory Turner's original declaration," Def. Reply Br. at 10.

An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298.  "Such a description might include, for example, a list of

19

databases to which [the agency] has access and a delineation of what types of records each database contains." *Id.* at 300.

Mr. Turner's supplemental declaration states that "the AMC's share drive in the NIPRNET (Nonsecure Internet Protocol Router Network)" was the best place for HQ AMC to search for responsive records, Turner 2d Decl. ¶3.b., and that "HQ AMC is not a repository of any CTARNG records," *id.* ¶ 3.a.  However, his declarations do not describe the structure or organization of the AMC's share drive or the types of files, records, or data stored within. Further, the declarations do not address the existence of other file systems within HQ AMC and do not describe the types of files, records, and data that are maintained by HQ AMC.  Without providing such information, an agency has not satisfied its burden to establish the adequacy of its search.  *See Vietnam Veterans*, 8 F. Supp. 3d at 206 (requiring affidavits describe structure of agency's file system sufficiently to show that further search unlikely to disclose additional relevant information); *SWAN I*, 888 F. Supp. 2d at 248 (requiring agencies to explain why certain databases were searched and others were not); *El Badrawi*, 583 F. Supp. 2d at 300 (finding a description of the searched database insufficient, as the larger file system was not described).

When an agency conducts a limited search, it also must explain its reasons for designing or narrowing its search strategy.  *See SWAN I*, 888 F. Supp. 2d. at 249-50.  Mr. Turner states that HQ AMC searched its share drive in the NIPRNET system using the terms "Cheryl Ann Eberg," "143rd Combat Sustainment Support Battalion," "CSSB," and "143."  *See* Turner 2d Decl. ¶¶ 3.b., 3.c.  These terms relate only to items 1, 2, 5, and 6 of Plaintiff's FOIA request.  Mr. Turner's declarations do not explain why his search excluded terms pertaining to item 3 of Plaintiff's FOIA request.

Therefore, the Court must deny summary judgment as to the adequacy of the search conducted by HQ AMC.

### 8.   Army Office of the Deputy Chief of Staff G-1

Defendant submitted two declarations from Kathleen Vaughn-Burford, the Management Analyst and FOIA/Privacy Act Officer for Headquarters, G-1: the first filed with Defendant's Motion for Summary Judgment, *see* Vaughn-Burford Decl., Doc. No. 30-11, and the second filed with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Vaughn-Burford 2d Decl., Doc. No. 36-8, "[t]o address Plaintiff's issues with Kathleen Vaughn-Burford's original declaration," Def. Reply Br. at 11.

To prevail on summary judgment, the "defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents," *Vietnam Veterans*, 8 F. Supp. 3d at 205 (quotation marks omitted), and agency declarations must be "relatively detailed and nonconclusory and submitted in good faith," *Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005). An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298. "Such a description might include, for example, a list of databases to which [the agency] has access and a delineation of what types of records each database contains." *Id.* at 300.

Ms. Vaughn-Burford states that the portion of Plaintiff's FOIA request relating to complaints of sexual assault, sexual harassment, and equal opportunity falls under her office's purview. *See* Vaughn-Burford Decl. ¶ 4. She further states that she requested a search of the Equal Opportunity Reporting System (EORS) for responsive records. *See id.* Ms. Vaughn-Burford describes EORS as a system for storing complaints without the use of Personally

Identifying Information (PII). *See* Vaughn-Burford 2d Decl. ¶ 2. Even after her supplemental declaration, however, it remains unclear whether EORS is the only file system used by her office.

Ms. Vaughn-Burford's declarations in this case, like the declarations she and other G-1 officials submitted in *Vietnam Veterans*, are "insufficiently detailed to show that the Army G-1 conducted a search that was reasonably calculated to uncover all relevant documents." 8 F. Supp. 3d at 211. In denying summary judgment, the *Vietnam Veterans* court noted that Ms. Vaughn-Burford's declaration "does not address the office's filing system" and that other declarations submitted by the G-1 were "unclear whether the office maintains" other files separately from the ones searched. *Id*. The same shortcomings exist in the G-1's declarations in this case.

In addition, an agency must provide a reasonable explanation as to why it used certain terms or strategies and not others if the terms are not sufficiently exhaustive. *See SWAN I*, 888 F. Supp. 2d at 248. Ms. Vaughn-Burford conducted only a "name search," using PII terms such as "Cheryl Ann Eberg," "Cheryl Gilbert," and "Cheryl Pilgrim" to search a database that typically "does not contain PII." Vaughn-Burford 2d Decl. ¶ 2. The use of such search terms in EORS thus appears unlikely to yield responsive records. Ms. Vaughn-Burford's declarations are therefore also inadequate in that they provide no explanation why other search terms would not have been more likely to capture responsive documents. *See Vietnam Veterans*, 8 F. Supp. 3d at 211 (denying summary judgment because declaration did not explain why selected search terms would capture responsive documents).

Accordingly, summary judgment is denied as to the adequacy of the search conducted by the G-1.

### 9.      Department of Defense Freedom of Information Division

Defendant submitted two declarations from Paul Jacobsmeyer, the Chief of the FOID: the first filed with Defendant's Motion for Summary Judgment, *see* Jacobsmeyer Decl., Doc. No. 30-1, and the second filed with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Jacobsmeyer 2d Decl., Doc. No. 36-1, "[t]o address Plaintiff's issues with Paul J. Jacobsmeyer's original declaration," Def. Reply Br. at 11.

To prevail on summary judgment, the "defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents," *Vietnam Veterans*, 8 F. Supp. 3d at 205 (quotation marks omitted), and agency declarations must be "relatively detailed and nonconclusory and submitted in good faith," *Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005). An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298.

FOID provided a "no records" response to Plaintiff in response to her FOIA request, without having conducted a search. *See* Jacobsmeyer Decl. ¶ 4; Jacobsmeyer 2d Decl. ¶ 3. Mr. Jacobsmeyer's declarations do not explain the agency's file systems or the files, records, and data kept within. Without any such explanation, Plaintiff and the Court are unable to evaluate whether FOID's response was adequate.

Mr. Jacobsmeyer states that he knew a search would yield no responsive records. *See* Jacobsmeyer 2d Decl. ¶ 2. Such an assertion is insufficient because it is unsupported by any details. *See El Badrawi*, 583 F. Supp. 2d at 301. An agency declaration must be detailed and nonconlusory, *see Grand Cent. P'ship.*, 166 F.3d at 478, and must explain not only the searches it undertakes but also those it foregoes, *see SWAN I*, 888 F. Supp. 2d at 248. If an agency

specifically decides not to conduct a search, it must "give detailed justifications" in order to meet the "relatively detailed and nonconclusory" standard. *El Badrawi*, 583 F. Supp. 2d at 301.

Thus, the Court denies summary judgment as to the adequacy of the search conducted by the FOID.

### 10.      Department of Defense Office of Inspector General

Defendant submitted two declarations from Jeanne Miller, the Chief of the FOIA/Privacy Act Office for the DoD Office of Inspector General ("OIG"): the first filed with Defendant's Motion for Summary Judgment, *see* Miller Decl., Doc. No. 30-2, and the second filed with Defendant's Reply Memorandum in Support of Motion for Summary Judgment, *see* Miller 2d Decl., Doc. No. 36-2.

An agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298. "Such a description might include, for example, a list of databases to which [the agency] has access and a delineation of what types of records each database contains." *Id.* at 300. Ms. Miller's declarations fail to describe her office's file systems adequately. Ms. Miller's second declaration does provide a description of the components of the DoD OIG tasked with searching for responsive records. *See* Miller 2d Decl. ¶ 7. However, the declaration contains no explanation of the databases that the various components use. Ms. Miller's declarations also provide no explanation as to why her office searched certain available databases and not others, which is required by the reasonable specificity standard. *See El Badrawi*, 583 F. Supp. 2d at 301 (declaration must "give detailed justifications" to support assertion that all responsive information would be in the particular database that was searched and decision not to search other databases).

24

Consequently, the DoD OIG has not met its burden of proving that it conducted a reasonable search as a matter of law, and the Motion for Summary Judgment is denied as to the adequacy of its search.

### B.    Applicability of Exemptions

"A refusal to confirm or deny the existence of records by a government agency is known as a *Glomar* response."  *El Badrawi*, 583 F. Supp. 2d at 295 n.3.  Defendant gave a *Glomar* response to FOIA request item 4 and linked it to FOIA Exemptions 6 and 7(C).  These exemptions permit agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).[3]

The Second Circuit has consistently emphasized that, "[i]n keeping with the policy of full disclosure, the [FOIA] exemptions are narrowly construed with doubts resolved in favor of disclosure."  *Halpern*, 181 F.3d at 287 (quotation marks omitted).

> Exceptions to FOIA's general principle of broad disclosure of Government records have consistently been given a narrow compass.  The government bears the burden of demonstrating that an exemption applies to ***each item*** of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure.

*Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1530 (2015) (emphasis added) (quotation marks and citations omitted).

---

[3] The standard for evaluating a threatened invasion of privacy interests under Exemption 7(C) "is somewhat broader than the standard applicable" under Exemption 6.  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989).  Because both exemptions are implicated here, the Court will analyze this case under the broader 7(C) standard.  *See Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002).

To meet its burden, an agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Vietnam Veterans*, 8 F. Supp. 3d at 228 (quotation marks omitted). "This justification typically takes the form of a *Vaughn* index, named for the case that introduced it." *El Badrawi*, 583 F.Supp.2d at 310 (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973)). "The *Vaughn* index must explain specifically which of the nine statutory exemptions to FOIA's general rule of disclosure supports the agency's decision to withhold a requested document or to delete information from a released document." *Vietnam Veterans*, 8 F. Supp. 3d at 228 (quotation marks omitted). Furthermore, the *Vaughn* index must provide "information that is not only specific enough to obviate the need for an *in camera* review, but that also enables the court to review the agency's claimed redactions without having to pull the contextual information out of the redacted documents for itself." *Halpern*, 181 F.3d at 294. "Courts have observed repeatedly that the *Vaughn* index is critical to effective enforcement of FOIA. Without such an index neither reviewing courts nor individuals seeking agency records can evaluate an agency's response to a request for government records." *El Badrawi*, 583 F. Supp. 2d at 310 (quotation marks and citations omitted).

As the Supreme Court has noted, "Exemption 7(C), by its terms, permits an agency to withhold a document only when revelation 'could reasonably be expected to constitute an *unwarranted* invasion of personal privacy.'" *Reporters Comm.*, 489 U.S. at 771. Congress enacted the FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) "[W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of

the requested document and its relationship to" this "basic purpose" of the FOIA.  *Reporters Comm.*, 489 U.S. at 772.

"In analyzing the applicability of exemption 7(C), a court must consider three factors: (1) whether the document was compiled for law enforcement purposes, (2) whether the record implicates a recognized privacy interest, and (3) whether the privacy interest is outweighed by an overriding public interest in disclosure of the information."  *Peeler v. U.S. Dep't of Justice*, No. 3:13-cv-132, 2015 WL 418136, at *5, 2015 U.S. Dist. LEXIS 11525, at *12 (D. Conn. Jan. 30, 2015).  As noted above, item 4 requests complaints and records of sexual assault, EO, and sexual harassment made against Colonel Adams.  Plaintiff does not dispute that the records requested are law enforcement records for purposes of Exemption 7(C) or that they implicate a recognized privacy interest.  Therefore, the Court need not address the first two factors in resolving this motion.

Before turning to the third factor balancing test, the Court must determine whether there is anything to balance, *i.e.*, is there any public interest in the disclosure of the information sought to be weighed against a recognized privacy interest?  As noted above, item 4 requests all records related to any complaints of sexual assault, EO, and sexual harassment made against Colonel Adams, including any records of investigation of such complaints and communications about the complaint.  The public interest in the requested records is significant.

For example, the court in *SWAN* noted the importance of "public understanding" concerning "the prevalence of and response to sexual assault and its associated psychological fallout in the U.S. military."  *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 290 (D. Conn. 2012) (hereinafter "*SWAN II*").  The DoD received nearly 1,400 reports of sexual harassment in 2013, which experts believe is a small fraction of the total number of

incidents. *See* Larson Decl., Exhs. A, B.  Most of those who reported sexual harassment were

women, *see id.*, Exh. B, which indicates gender-based obstacles to success in the military, and

issues of gender discrimination have long been a matter of strong public concern, *see*, *e.g.*, the

Equal Pay Act of 1963; Title VII of the Civil Rights Act of 1964; Title IX of the Education

Amendments of 1972; the Violence Against Women Act of 1994.  In 2013, the Secretary of

Defense recognized sexual assault as "a threat to the discipline and the cohesion of our force"

and publicly committed the DoD to an aggressive campaign to strengthen sexual assault

prevention and response efforts, particularly with respect to commanders.  *See* Larson Decl.,

Exh. C.  He described eliminating sexual assault in the military as "one of the Department of

Defense's highest priorities."  *Id.*

>  The Second Circuit has provided guidance on how to apply the balancing test:

>  in balancing a government employee's privacy interests against the public's
>  interest in disclosure, a court should consider several factors, including: (1) the
>  government employee's rank; (2) the degree of wrongdoing and strength of
>  evidence against the employee; (3) whether there are other ways to obtain the
>  information; (4) whether the information sought sheds light on a government
>  activity; and (5) whether the information sought is related to job function or is of
>  a personal nature.   The factors are not all inclusive, and no one factor is
>  dispositive.

*Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 107 (2d Cir. 2002), *cert. granted*, *judgment*

*vacated sub nom. Perlman v. Dep't of Justice*, 541 U.S. 970 (2004).

**(1) Rank of government employee:**  This factor weighs strongly in favor of disclosure.

Colonel Adams is a high-ranking officer in the United States military, and served in a command

role over Plaintiff and many others.

**(2) Degree of wrongdoing and strength of evidence against the employee:**  The degree

of wrongdoing alleged is fairly serious, and thus weighs in favor of disclosure.  However, the

strength of the evidence is somewhat limited, as it is primarily based on Plaintiff's allegations

and circumstantial evidence.  Thus, the strength of the evidence does not weigh heavily in favor of disclosure.

**(3) Availability of other means to obtain the information:**  It appears that Defendant and its component agencies have exclusive access to the records sought.  Thus, this factor argues for disclosure.

**(4) Whether the information sought sheds light on government activity:**  The records requested would open the DoD's handling of sexual misconduct complaints to the light of public scrutiny.  Therefore, this factor weighs heavily in favor of disclosure.

**(5) Whether the information is related to job function, or is of a personal nature:**  Sexual harassment by a superior in the workplace is not information of a personal nature, and is most certainly related to that superior's job function.  The information requested by item 4 does not seek "to obtain personal information about government employees," but rather "relate[s] to the employee's performance of his public duties," *i.e.*, leading subordinates under his command. *Perlman*, 312 F.3d at 108.  Thus, this factor weighs in favor of disclosure.

On balance, the *Perlman* factors weigh in favor of disclosure.  The public's interest in the disclosure of the records requested in item 4 outweighs Colonel Adams's interest in keeping the information private.  Therefore, summary judgment must be denied as to Defendant's *Glomar* responses.

## C.    Discovery

Plaintiff requests leave to take limited discovery by way of depositions from agencies that submitted inadequate declarations on the pending motion for summary judgment.

> If agency affidavits fail to meet standards, a district court will have a number of options for eliciting further detail from the government. It may require supplemental affidavits or may permit appellant further discovery.  When the courts have permitted discovery in FOIA cases, it is generally limited to the scope

of the agency's search.  Further, courts have consistently held that a court should
not, of course, cut off discovery before a proper record has been developed; for
example, where the agency's response raises serious doubts as to the
completeness of the agency's search, where the agency's response is patently
incomplete, or where the agency's response is for some other reason
unsatisfactory.

*Vietnam Veterans*, 8 F. Supp. 3d 188, 206 (D. Conn. 2014).  Because this Court finds that

Defendant has failed to establish the adequacy of the searches conducted by a number of its

agencies, the Court shall allow limited discovery to proceed with respect to those agencies.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 28] is

GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to the adequacy of

the searches conducted by the USACIDC Crime Record Center, OTJAG, Clerk of the Court for

the ACCA, Army OGC, USARCENT, AEOPB, PACOM, 45th SB, and AHRC.  The motion is

DENIED as to the adequacy of the searches conducted by the DAIG, CTARNG, NGB,

USARPAC, HQ AMC, G-1, DoD FOID, and DoD OIG; and DENIED as to Defendant's

invocations of Exemptions 6 and 7(C).

Plaintiff will be allowed limited discovery as to the adequacy of Defendant's searches.

*See El Badrawi*, 583 F. Supp. 2d at 321.  First, Defendants shall provide to Plaintiff any further

information in its possession responsive to Plaintiff's FOIA request and consistent with this

Court's Ruling within 30 days of the entry of this Ruling.  Following that 30-day period, to the

extent that such discovery is still necessary, Plaintiff will be permitted to take limited discovery,

consisting solely of deposing the agency employees who submitted declarations on behalf of the

agencies that remain at issue, or substitute employees of similar responsibility in the event the

declarants are no longer employed by the agency.

Nothing in this Ruling, of course, precludes the parties from working out an alternative plan for the resolution of the outstanding issues in this case without further court involvement.

SO ORDERED at Bridgeport, Connecticut, this 2nd day of June, 2016.


　　/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge